UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────── x

DAMON MILLER,

        Plaintiff,

-against-                                              20 civ 9039 (CM)

RYAN SCHUNEMANN et al.,

        Defendants.

───────────────────────────────── x

## DECISIONS ON MOTIONS IN LIMINE

McMahon, J.:

    The court, for its decision on the pending motions in limine:

    I note first and foremost that Plaintiff has filed not a single word in opposition to these motions. The fact that he has defaulted in responding does not mean I can simply grant the motions; I have to ascertain whether they are meritorious. I freely admit that I am doing so with one hand tied behind my back, since I am only hearing one side of the story. But the time to respond to these motions expired long ago, and with a final pre-trial conference coming up on September 7, I need to get these motions decided.

1. Defendants Ryan Schunemann and Blue Diamond Transport move in limine for an order precluding Plaintiff from calling as an expert witness Stephen Emolo (Docket #73).

    Mr. Emolo was originally (and timely) designated as an expert in this case by Defendant Air Contact Transport, Inc. Air Contact and Plaintiff reached a settlement on May 11, 2023 (Docket #71). Four days later, Defendants moved to preclude Plaintiff from calling Emolo as his expert on the ground that Plaintiff had failed to designate him as an expert in a timely manner. The moving papers noted that Air Transport had already designated Emolo as its expert, but did not mention that Air Transport had settled just a few days before the motions in limine were filed. The moving papers also include excerpts from Emolo's deposition, indicating that the Defendants have already had an opportunity to examine him thoroughly about his opinions, which are favorable to Plaintiff and not favorable to the moving Defendants.

    I deny the motion to preclude on the ground that Plaintiff failed to designate Emolo as its expert. Plaintiff had no need to do so. Until May 11, 2023, Plaintiff had every reason to believe that Emolo would testify on behalf of Air Transport and would give opinions that were favorable

to Plaintiff as well as Air Transport. Moving Defendants do not dispute that Emolo was timely designated as an expert by another party and that they have had the opportunity to depose him. The rule prohibiting parties from calling experts who have not been designated is to prevent sandbagging and to make sure that opposing parties have an opportunity to take discovery from experts who will testify at trial. Moving Defendants are not being sandbagged; Emolo was designated on July 22, 2021, and they have deposed him. If Plaintiff wishes to call Emolo (he may not), the better part of valor would have been for Plaintiff's counsel to file a belated designation of Emolo as his own expert, together with an explanation for the lateness of the designation. However, Plaintiff's failure to designate an already-designated expert is both substantially justified and, in the circumstances of this case, completely harmless.

Moving Defendants move on the alternate ground that the testimony of Emolo is not sufficiently reliable to be admitted, but as is generally the case with *Daubert* motions, the arguments propounded all go to the weight of his testimony, not to its admissibility. Mr. Emolo's credentials are impeccable. He may offer his opinions. I am sure cross examination will be robust.

By the way, nothing in this ruling compels Plaintiff to call Emolo. He may if he wishes to do so.

The motion is in all respects DENIED.

2. Defendants Schunemann and Blue Diamond move in limine for an order precluding or limiting the testimony of Dr. Barry Katzmann, Plaintiff's treating physician. (Docket #79).

Moving Defendants seek an order precluding Dr. Katzmann, a treating physician of Plaintiff, from testifying to anything other than the matters disclosed in his expert witness disclosure. That motion is GRANTED. Dr. Katzmann's report of January 19, 2021 has not been updated since that time and the time for doing so has long since expired.

3. Defendants Schunemann and Blue Diamond move in limine for an order precluding the testimony of Plaintiff's life care expert, Dr. Daniel Wolstein. (Docket #76).

Dr. Wolstein is not a physician; he is a vocational counselor and consultant evaluator, with a PhD in Rehabilitation Counseling and Administration from East Carolina University, a Masters in Rehabilitation Counseling from Rutgers, and considerable experience including making many reports at professional conferences. He has prepared a Life Care Plan for Plaintiff after conducting an evaluation of Plaintiff. His Plan is his Expert Report.

Moving Defendants first argue that Dr. Wolstein's expert report is deficient, in that it is not a statement of the opinions he intends to give at trial. They also argue that his report is simply *ispe dixit*, in that it does not express any opinion on causation, he did not perform any tests on Plaintiff, and he is not medically qualified to opine on the nature of Plaintiff's injuries.

The motion is DENIED, but Dr. Wolstein's testimony will be limited in the following manner:

Dr. Wolstein's Life Care Plan sets out his methodology for evaluating "the specific manner in which the resulting deficits [from the motor vehicle accident] impede Mr. Miller's ability to demonstrate independent living skills," and for making recommendations about Mr. Miller's future needs and the cost of such care. He explains what a Life Care Plan is and how one is created. Dr. Wolstein reviewed Plaintiff's medical records to the date of his Report (September 2021). He summarizes Plaintiff's reported physical limitations and levels of pain (as reported by Plaintiff). He calculates Plaintiff's life expectancy using nationally recognized tables. And he then estimates the cost of physician follow-up, therapy evaluations and therapies, medications (Diclofenac, both internal and topical, and Tylenol, which are available over the counter at any drug store), surgical interventions (a knee arthroscopy, and lumbar fusion), aids for independence and supplies (all of which are listed at page 20 and include such things as bathroom grab bars, lumbar support cushions and canes, at a cost of about $400/year) and case management. I note that the principal cost for medication is for cannabis.

In short, Dr. Wolstein is Plaintiff's damages expert. He estimates what it will cost, for surgery, therapy, equipment and pain medication, to manage what he has been told are the injuries suffered by Plaintiff in the accident. Dr. Wolstein has gathered up the cost of various items that may be required by Plaintiff over the course of his life. He is competent to offer testimony about those costs. While jurors may have an idea about what Tylenol (acetaminophen) costs, they probably are not familiar with the cost of physical therapy or diagnostic tests or various devices that can be installed or used to increase mobility. So, Dr. Wolstein's testimony about the value of such items would be helpful to a lay juror.

Dr. Wolstein is perfectly competent to offer testimony about what it would cost Plaintiff over and above the ordinary costs of daily life as a result of certain physical conditions. He cannot opine (and he does not purport to opine) whether Plaintiff is actually suffering from the conditions about which he complains. He cannot testify that the accident in suit caused those physical conditions. He cannot testify about whether Plaintiff will require fusion surgery (one of the costlier items on his list of potential expenses). He cannot opine whether Plaintiff's condition will worsen or improve. As is always the case, he can only testify about what Plaintiff's life expectancy is; he cannot predict whether this particular plaintiff will actually live to the age of 80.3 years. Those matters are hypotheticals that he has been asked to accept.

Put otherwise, Dr. Wolstein may be asked a hypothetical question that goes something like this: "Assume, Dr. Wolstein, that the jury concludes the following: Plaintiff was injured in the automobile accident; that injury consisted of [what]; Plaintiff is presently suffering [to what degree and in what manner]; and Plaintiff will continue to suffer in this way for the duration of his life; and Plaintiff will live to the normal life expectancy of a man his age. Can you estimate to a reasonable degree of certainty what it will cost to provide Plaintiff with the assistance he needs to life a normal and pain-free life?" Dr. Wolstein may answer that question. Whether any of the assumptions that underlie his testimony are true is a matter for the jury to decide.

The jury will be instructed that Dr. Wolstein's expertise, and so his testimony, is limited to estimating what particular things will cost Plaintiff over the course of his statistical life expectancy. If they find that Plaintiff is not suffering any injury as a result of the accident, then they will be

told to disregard the testimony. If other witnesses fail to convince them that Plaintiff will require fusion surgery, or a walker or a cane, or cannabis for pain, they will be directed to disregard so much of Dr. Wolstein's testimony as estimated the cost of such matters. And if they conclude that Plaintiff is not going to live to his full life expectancy – or that he is going to live longer – they will be instructed to adjust any damages award accordingly.

The Clerk of Court is directed to remove the motions at Dockets ## 73, 76 and 79 from the court's list of open motions.

Dated: August 9, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL